IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYLVIA GITTELMACHER,<br>*Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| TRAVELERS PROPERTY CASUALTY<br>INSURANCE COMPANY et al.,<br>*Defendants* | : | NO. 21-3264 |

### MEMORANDUM

PRATTER, J.                      MARCH 27, 2023

Sylvia Gittelmacher was struck by a car while on foot. After suffering an injury, she recovered up to the liability limits of both the driver's coverage and the underinsured motorist coverage under her own insurance policy. Then, she made claims for underinsured motorist coverage under her daughter's and granddaughter's policies. When those claims were denied, Ms. Gittelmacher commenced this suit against Travelers Property Casualty Insurance Company and Depositors Insurance Company, arguing that she was entitled to "stack" her daughter's and granddaughter's coverage on top of her own. But Ms. Gittelmacher knowingly waived stacked coverage so that she could pay a lower premium. Travelers' and Depositors' motions for summary judgment will be granted for the reasons set forth below.

#### BACKGROUND

Ms. Gittelmacher was struck by an automobile while she was walking through a parking lot in Bensalem, Pennsylvania. Because of the accident, Ms. Gittelmacher sustained injuries including a tibial plateau fracture, which required surgery. The driver of the vehicle had insurance with a per person bodily injury liability limit of $15,000, which was paid out to Ms. Gittelmacher.

At the time of the accident, Ms. Gittelmacher had her own automobile insurance policy with Depositors, which covered one vehicle and had a bodily injury liability limit of $100,000 per

1

person and $300,000 per accident and matching underinsured motorist ("UIM") coverage limits. Prior to the accident, Ms. Gittelmacher had signed a waiver of stacked UIM coverage, which read:

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of the limits for each motor vehicle under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

Ex. C to Depositors' Mot. for Summ. J. at ECF 128.

Ms. Gittelmacher was also an insured under two other policies in her household: (1) a one-vehicle Depositors policy with a bodily injury liability limit of $100,000 per person and $300,000 per accident and matching UIM coverage limits, issued to Ms. Gittelmacher's resident relative granddaughter, Paige Lyons (the "Lyons Depositors Policy") and (2) a Travelers Insurance Company policy with UIM coverage limits of $50,000 per accident issued to her daughter, Sheryl Lyons (the "Lyons Travelers Policy"). Like Ms. Gittelmacher's policy, the Lyons Depositors Policy and the Lyons Travelers Policy each insured one vehicle, and both Ms. Paige Lyons and Ms. Sheryl Lyons elected to waive stacked coverage.

Both Ms. Gittelmacher's policy and the Lyons Depositors Policy contain an "Other Insurance" clause, stating that two different priorities of recovery apply:

> First    The Underinsured Motorists Coverage applicable to the vehicle the "insured" was occupying at the time of the accident.
> Second    The policy affording Underinsured Motorists Coverage to the "insured" as a named insured or family member.

Ex. B to Depositors' Mot. for Summ. J at ECF 115. The clause continues:

> When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

2

> If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

*Id.* The Lyons Travelers Policy has substantially similar language to Ms. Gittelmacher's policy and the Lyons Depositors Policy and provides in relevant part:

> [W]hen there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

Ex. 1 to Travelers' Mot. for Summ. J at ECF 36.

Ms. Gittelmacher made a claim for underinsured motorist coverage benefits under all three policies in her household, demanding $250,000. Depositors paid out only $100,000 after considering the "Other Insurance" language in Ms. Gittelmacher's policy. Travelers paid Depositors $20,000; its *pro rata* share of the amount the insurance company believed to be recoverable by Ms. Gittelmacher.

Ms. Gittelmacher filed suit in the Montgomery County Court of Common Pleas against Depositors and Travelers, alleging breach of contract against Depositors (Count I), bad faith against Depositors (Count II), unjust enrichment against Depositors (Count III), breach of contract against Travelers (Count IV), bad faith against Travelers (Count V), unjust enrichment against Travelers (Count VI), and for a declaratory judgment against all defendants that the "Other Insurance" clauses in the Lyons Depositor Policy and the Lyons Travelers Policy violate the public policy of Pennsylvania (Count VII). After removal to this Court by Travelers, Ms. Gittelmacher stipulated to dismissal without prejudice of her bad faith and unjust enrichment claims against

Travelers and Depositors (Counts II, III, V, and VI), along with the demands for attorney's fees under Count IV.[1]

Following the close of discovery,[2] Depositors and Travelers moved for summary judgment on the remaining breach of contract and declaratory judgment claims. The insurance companies argue that Ms. Gittelmacher is not permitted to recover from the Lyons Depositors Policy as a matter of law because (1) Ms. Gittelmacher, her daughter, and her granddaughter knowingly waived interpolicy stacking; (2) the "Other Insurance" clause limits Ms. Gittelmacher's maximum recovery to the highest applicable limit for any one vehicle under any one policy (*i.e.*, the $100,000 already paid to Ms. Gittelmacher from her own policy); and (3) there is no legal basis for the Court to invalidate the "Other Insurance" clause because it does not violate the Pennsylvania Motor Vehicle Financial Responsibility Law, Pa. Cons. Stat §§ 1701-99.7 (the "MVFRL") or any other clearly expressed public policy of Pennsylvania. Ms. Gittelmacher filed briefs in opposition to the motions, and each side submitted supplemental briefing. The Court heard oral argument on the summary judgment motions, and the issues are ripe for resolution.

## LEGAL STANDARDS

A movant will prevail at summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if

---

[1] Ms. Gittelmacher states in her response to the Summary Judgment Motions that she will reinstate her claims for bad faith and attorney fees. However, she has failed to make any formal motions to reinstate those claims.

[2] Ms. Gittelmacher avers that discovery is not closed because Depositors has "stalled" discovery, and both insurance companies have provided insufficient responses to Ms. Gittelmacher's request for admissions. Therefore, she claims that the summary judgment motion is not ripe for the Court's review. Nevertheless, discovery was closed, per the Court's Amended Scheduling Order, on January 31, 2022, and Ms. Gittelmacher never filed a motion to compel such admissions.

4

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When sitting in diversity, this Court must apply state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Pennsylvania law, the purpose of interpreting an insurance contract "is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *401 Fourth St. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). Such a contract should be "construed as a whole." *Luko v. Lloyd's London*, 573 A.2d 1139, 1142 (Pa. Super. 1990). "[I]n Pennsylvania, . . . exclusions are strictly construed against the insurer, as are ambiguities in the policy." *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998).

Still, "a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy." *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006, 1008 (Pa. 1998). Whether public policy concerns should invalidate an insurance exclusion is a facts-and-circumstances inquiry. *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204, 207 (Pa. 2002). The Pennsylvania Supreme Court "consistently ha[s] been reluctant to invalidate a contractual provision due to public policy concerns." *Williams v. GEICO Gov't Emps. Ins. Co.*, 32 A.3d 1195, 1200 (Pa. 2011). That Court has also imposed a "heavy burden" on the litigant who seeks that a court "declare an unambiguous provision of an insurance contract void as against public policy." *Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180, 1190 (Pa. 2008). "Importantly, however, provisions of insurance contracts are invalid and unenforceable if they conflict with statutory mandates because contracts cannot alter existing laws." *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019).

## DISCUSSION

### I. Ms. Gittelmacher Is Not Entitled to Stacked Coverage Because She and the Other Policyholders Knowingly Waived Interpolicy Stacking

"The concept of stacking relates to the ability to add coverages from other vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." *Everhart v. PMA Ins. Grp.*, 938 A.2d 301, 302 (Pa. 2007). Under § 1738 of the MVFRL, stacked coverage is the default for uninsured and underinsured benefits. 75 Pa. Cons. Stat. § 1738(a); *Erie Ins. Exch. v. Mione*, No. 89 MAP 2021, 2023 WL 2008314, at *4 (Pa. Feb. 15, 2023). Therefore, in default situations, the amount of coverage "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." *Mione*, 2023 WL 2008314, at *4 (quoting 75 Pa. Const. Stat. § 1738(a)). However, stacked coverage may be waived by statutorily prescribed written waiver, 75 Pa. Cons. Stat. § 1738(d), "in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured." *Id.* § 1738(b).

There are two types of stacking: (1) intrapolicy stacking, in which a single insured can stack coverage limits on multiple vehicles under a single umbrella insurance policy;[3] and (2) interpolicy stacking, in which a single-vehicle insured can receive stacked benefits if she is an insured under multiple separate insurance policies that provide stacked uninsured motorist or UIM

---

[3] "For example: three cars insured under a single policy providing [$15,000.00 per person / $30,000.00 per occurrence] UIM benefits. If stacked, an insured is entitled to a total of $45,000[.00] in [ ]UIM benefits - three vehicles insured at $15,000[.00] each equaling $45,000[.00] in total coverage. If unstacked, only $15,000[.00] is available in [ ]UIM coverage." *Erie Ins. Exch. v. Backmeier*, 287 A.3d 931, 938–39 (Pa. Super. 2022) (quoting *McGovern v. Erie Ins. Group*, 796 A.2d 343, 344–45 (Pa. Super. 2002) (citation omitted), *appeal denied*, 809 A.2d 904 (Pa. 2002)).

6

benefits.[4] *See, e.g.*, 12 Steven Plitt et al., *Couch on Insurance* § 169:7 (3d ed. Nov. 2022 update). Here, the Court focuses on interpolicy stacking.

The Pennsylvania Supreme Court has held that interpolicy stacking may be waived under § 1738, but only if the waiver is "knowing." *Craley v. State Farm Fire & Cas. Co.*, 895 A.2d 530, 540–41 (Pa. 2006). The waiver form for underinsured coverage limits set forth in § 1738(d) reads:

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

75 Pa. Con. Stat. § 1738(d). In *Craley*, the Pennsylvania Supreme Court found that the § 1738(d) waiver language by its actual terms refers only to intrapolicy, not interpolicy, stacking, because the language refers to a waiver of benefits under a *singular* policy, rather than a waiver of benefits under *multiple* policies. *Craley*, 895 A.2d at 541–42; *accord Backmeier*, 287 A.3d at 940. That means that the statutory waiver does not by itself establish a valid waiver of interpolicy stacking. *Craley*, 895 A.2d at 541–42. But, as the *Craley* court reasoned, where the policy tied to the stacking waiver covers only one vehicle, intrapolicy stacking is not possible. *Id.* at 542. As a result, the policyholder with a single vehicle under the insurance policy has only one reasonable interpretation of the waiver available—that it is a waiver of *interpolicy* stacking—and therefore, "the waiver is valid and enforceable under the facts of th[e] case." *Id.*

---

[4] "For example: the same three cars, now separately insured all providing stacked [$15,000.00 per person / $30,000.00 per occurrence] UIM coverage. [Pursuant to the concept of inter-policy stacking, the] injured insured may still collect the $45,000[.00] in total coverage, the value of each policy being added together - $15,000[.00] + $15,000[.00] + $15,000[.00]." *Backmeier*, 287 A.3d at 939 (quoting *McGovern*, 796 A.2d at 345).

7

The rationale in *Craley* applies here because the relevant facts are not distinguishable. Like the policy at issue in *Craley*, Ms. Gittelmacher's policy, the Lyons Depositors Policy, and the Lyons Travelers Policy cover just one vehicle each, and the policyholders for all policies signed statutory waiver forms prior to the date of the accident.[5] When Ms. Gittelmacher and her resident relatives received premium reductions following execution of those waivers, they were "presumed to have known that the waiver applied to inter-policy stacking, notwithstanding [the] contention that [they] did not understand what [they] were signing." *See Costa v. Progressive Preferred Ins. Co.*, No. 16-cv-74, 2016 WL 3220515, at *3 (W.D. Pa. June 10, 2016) (internal quotation marks omitted). Additionally, limiting Ms. Gittelmacher's recovery under these facts, where all three named insureds waived stacking, means that this Court will not run afoul of the old insurance industry rule that "an injured should receive the coverage for which [s]he has paid." *Gallagher*, 201 A.3d at 138.

Ms. Gittelmacher argues that the insurance companies invalidated her and her resident relatives' stacking waivers when the insurance companies combined the total benefits available under a stacked policy so that Travelers could determine the *pro rata* share it was required to contribute to Depositors. This "waiver of waiver" theory appears to be entirely novel, and Ms. Gittelmacher cites to no caselaw where it is argued at all, let alone successfully argued, before any court, be it federal or state. The argument is not persuasive. Ms. Gittelmacher recovered the $100,000 she contracted for, the maximum amount owed to her following her execution of the UIM waiver, out of her own policy with Depositors. Any later accounting occurring between the Lyons Depositors Policy and the Lyons Travelers Policy does not alter that fact, particularly

---

[5] The benefits waiver at issue here is a *UIM* stacking benefits waiver and, in *Craley*, it was an *uninsured motorist* stacking waiver. *Craley*, 895 A.2d at 533. This makes no practical difference, however, as the underinsured motorist and uninsured motorist sections of the MVFRL mirror each other. *Bubonovich v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-1537, 2021 WL 848885, at *3 (W.D. Pa. Mar. 4, 2021).

8

because the practice is explicitly endorsed by the MVFRL. *See* 75 Pa. Cons. Stat. § 1733(b) ("The insurer against whom a claim is asserted first . . . shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.").

Therefore, Ms. Gittelmacher is not entitled to stack the coverage of the Lyons Depositors Policy or Lyons Travelers Policy on top of her own policy with Depositors.

## II. Under the "Other Insurance" Clause in Her Policy, Ms. Gittelmacher Is Not Entitled to Recover Amounts in Excess of $100,000

Under § 1738 of the MVFRL, when the named insured waives stacking coverage, "the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured." 75 Pa. Con. Stat. § 1738(b). The "Other Insurance" clause in Ms. Gittelmacher's policy implements this section of the MVFRL and limits recovery in the event of multiple second priority insurers to "the highest applicable limit for any one vehicle under any one policy." Ex. B to Depositor's Mot. for Summ. J. at ECF 115. This language is permissible under the MVFRL because the "highest applicable limit constitutes a stated limit for a motor vehicle as to which the injured person is an insured." *See Meyers v. Travelers Ins. Co.*, 597 F. Supp. 3d 745, 754 (E.D. Pa. 2022) (internal quotation marks omitted) ("The only limitation this language imposes on an insured's recovery is that the policies' limits cannot be aggregated and that is precisely how the waiver of stacking is supposed to work."); *see also Backmeier*, 287 A.3d at 947. Indeed, if this Court found the "Other Insurance" provision contained in Ms. Gittelmacher's policy or other similarly worded provisions impermissible, it would fundamentally unravel the MVFRL's provision for waivers of stacking. *Meyers*, 597 F. Supp. 3d at 754. Courts outside of this district, both federal and state, have arrived at the same conclusion. *See, e.g., Backmeier*, 287 A.3d at 947; *Costa*, 2016 WL 3220515, at *2 (refusing to

9

find that a similarly worded "Other Insurance" clause was not triggered by a stacking waiver or that the clause violated Pennsylvania public policy); *Heller v. State Farm Ins. Cos.*, No. 408-2008, 2010 WL 1778629, (Venango Cnty. Ct. of C.P. Apr. 29, 2010), *aff'd by* 32 A.3d 269 (Pa. Super. 2011) (finding that where a valid waiver of stacking existed, there was no violation of the MVFRL or Pennsylvania public policy due to a similarly worded "Other Insurance" clause).

Applying the "Other Insurance" clause to this case, there is no "first priority" insurance available to Ms. Gittelmacher because she was a pedestrian and thus not occupying an insured vehicle at the time of the accident. *See* 75 Pa Cons. Stat. § 1733(a)(1) ("[P]ayment shall be made [first from a] policy covering a motor vehicle occupied by the injured person at the time of the accident."). Rather, the three policies from which she seeks recovery fall into the "second priority" bucket. *Id.* § 1733(a)(2) (listing as second priority "[a] policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured"); Ex. B at Depositor's Mot. for Summ J. at ECF 115. In other words, Ms. Gittelmacher can only recover $100,000, rather than $250,000 she seeks, because the highest applicable limit for Ms. Gittelmacher's vehicle under any one of the three policies is $100,000 under Ms. Gittelmacher's own policy. Looking to the final paragraph of the "Other Insurance" clause in Ms. Gittelmacher's policy, and as discussed above, after paying out the claim as if fully responsible, Depositors is entitled to recover *pro rata* contribution from each of the other relevant policies (*i.e.*, $40,000 from the Lyons Depositors Policy and $20,000 from the Lyons Travelers Policy). Ex. B, Depositor's Mot. for Summ J., at ECF 115. And to reiterate, far from being in violation of the MVFRL, the *pro rata* scheme aligns with § 1733(b) of the statute[6] and with the reduced premiums Ms.

---

[6] "The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim." 75 Pa. Con. Stat. § 1733(b).

Gittelmacher, her daughter, and her granddaughter paid in consideration for signing waivers of stacked recovery for each of the three insurance policies. To permit additional recovery would not be reasonable in light of the clear language of the policy and, moreover, would not align with the Pennsylvania Supreme Court's practice of "enforc[ing] contractual language to avoid *gratis* coverage." *Pa. Nat. Mut. Cas. Co. v. Black*, 916 A.2d 569, 581 (Pa. 2007).

Ms. Gittelmacher counters that she paid for $100,000 in UIM benefits, her daughter paid for $50,000 in UIM benefits, and her granddaughter paid for $100,000 in UIM benefits. But, she argues, the "Other Insurance" clause made these elected amounts illusory, because under the *pro rata* arrangement, Ms. Gittelmacher and her resident relatives received pennies on the dollar when it came to a payout following her parking lot injury: Ms. Gittelmacher and her granddaughter paid for $100,000 in benefits but effectively only received $40,000 each, and her daughter paid for $50,000 in benefits but only received $20,000 in actual benefits following the *pro rata* accounting that occurred between the two insurance companies. Moreover, the non-injured resident relatives were then charged with claims against their respective policies.

The problem with Ms. Gittelmacher's argument is twofold. First, Ms. Gittelmacher and her resident relatives each paid a lower premium in consideration for waiving their stacking benefits, such that Ms. Gittelmacher was limited to recover a maximum of $100,000 in UIM benefits from the policies available to her in the second priority, including Ms. Gittelmacher's policy, the Lyons Depositors Policy, and the Lyons Travelers Policy. *See also Costa,* 2016 WL 3220515, at *3 ("Allowing any additional recovery would provide Plaintiff with coverage for which [she] never paid a premium, which would be inconsistent with the Pennsylvania Supreme Court's admonition that contractual language must be construed to avoid *gratis* coverage." (internal quotation marks omitted)). In a breach of contract claim, "[a]ny expectation that Ms. [Gittelmacher] had to the

11

contrary was not reasonable in light of the clear language of the policy." *Id.* Second, Ms. Gittelmacher's daughter and granddaughter do not join her as plaintiffs in this suit, and Ms. Gittelmacher has not explained how she has standing to recover for the alleged injury to her relatives.

Because Depositors' payment of $100,000 to Ms. Gittelmacher and Travelers' *pro rata* payment of $20,000 to Depositors align with the terms of the relevant policies following her and her resident relatives' execution of non-stacking waivers, Ms. Gittelmacher cannot succeed on her breach of contract claims or bad faith claims.

### III. The "Other Insurance" Clause Violates Neither the MVFRL nor Clearly Expressed Public Policy

"[UIM]coverage serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries." *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006, 1010 (Pa. 1998). "That purpose, however, does not rise to the level of public policy overriding every other consideration of contract construction." *Id.* A litigant carries a heavy burden of proof when she seeks to argue that a clear and unambiguous contract clause is void as in violation of public policy. *Sayles v. Allstate Ins. Co.*, 219 A.3d 1110, 1122–23 (Pa. 2019).

#### A. *Generette*'s Reasoning Does Not Apply to Invalidate the "Other Insurance" Clause as Against Public Policy

Ms. Gittelmacher argues that the "Other Insurance" clause violates Pennsylvania law and invites this Court to apply the reasoning in *Generette v. Donegal Mutual Insurance Company.*, 957 A.2d 1180, 1191 (Pa. 2008), to broaden the general policy of excess UIM coverage within the MVFRL. The Court declines to take up that invitation.

The MVFRL operates as part of an "excess coverage" regime. *Backmeier,* 287 A.3d at 942–43 (citing *Generette*, 957 A.2d at 1191). Under the excess coverage framework, the tortfeasor

is underinsured if his policy coverage limits are less than the injured insured's actual losses, and the injured insured's coverage is "excess" above the liability policy of the tortfeasor. *Id.* (quoting *Generette*, 957 A.2d at 1186 n.12). An injured insured in this type of regime, like Ms. Gittelmacher, will recover first under the tortfeasor's policy up to the limit and then recover under her own policy up to the lesser of her coverage limits or the total amount of damages. *Allwein v. Donegal Mut. Ins. Co.*, 671 A.2d 744, 747 (Pa. Super. 1996). In a *gap coverage* framework, in contrast, the tortfeasor is underinsured where his liability limits are less than the injured insured's own policy limit rather than her losses. *Id.* The injured insured's own policy benefits fill the gap between the tortfeasor's liability limits and the injured person's liability limits—that is, the recovery from the tortfeasor's policy is deducted from the amount recoverable under the injured insured's UIM policy. *Id.*

An "Other Insurance" clause may be found unenforceable if it does not align with the MVFRL excess coverage framework. *Generette*, 957 A.2d at 1191. The Pennsylvania Supreme Court concluded that § 1733 of the MVFRL, which defines first and second priority UIM coverage, does not provide for gap coverage, and therefore, first and second priority UIM policies should interact in an excess insurance framework. *Id.* That is, any policy provisions that would deduct first priority policy limits from the second priority policy limits would violate the MVFRL as against public policy. *Backmeier*, 287 A.3d at 944 (citing *Generette*, 957 A.2d at 1192; *Allwein*, 671 A.2d at 747–50).

The Pennsylvania Supreme Court has not yet determined whether an insurance clause that implements a UIM stacking waiver by limiting maximum recovery to the highest applicable coverage limit among all second priority insurers violates the MVFRL's excess coverage mandate or some other public policy. *Backmeier*, 287 A.3d at 945; *Meyers*, 597 F. Supp. 3d at 751. In *Meyers*,

13

a court in this district, in predicting how the Pennsylvania Supreme Court would resolve that issue, looked to the language of § 1738, specifically that the limits of coverage for a non-stacked UIM policy equal "the stated limits for the motor vehicle as to which the injured person is an insured." 75 Pa. Con. Stats. § 1738(b). The court reasoned that an "Other Insurance" clause precluding the aggregation of policy limits within the second priority category following execution of a waiver of stacked benefits was fully in compliance with § 1738, and it refused to expand the excess coverage framework so broadly that it would invalidate the express language of a provision of the MVFRL. *Meyers*, 597 F. Supp. 3d at 754; *see also Backmeier*, 287 A.3d at 945 n.8 (noting that the Pennsylvania Superior Court found the rationale in *Meyers* persuasive). Here, Ms. Gittelmacher has simply not met her burden to show how the "Other Insurance" clause can be against Pennsylvania public policy when it is included to implement a statutory provision of § 1738.

Ms. Gittelmacher attempts to distinguish her case from the plaintiff's case in *Meyers* because Ms. Gittelmacher was a pedestrian when she was struck, whereas Ms. Meyers occupied a car at the time of her accident. *Meyers*, 597 F. Supp. 3d at 748. This shifts the Court's focus from the horizontal relationship amongst second priority insurers to the vertical relationship between a first priority insurer and a second priority insurer. Ms. Gittelmacher asserts that, because pedestrians are not properly accounted for in the MVFRL, she has drawn a short stick and is entitled to no first priority recovery under § 1733(a)(1), leaving recovery under § 1733(a)(2) as her only option. 75 Pa. Cons. Stat § 1733(a). This, she claims, results in ambiguity and effectively converts the excess coverage regime into a gap regime for all injured pedestrian insureds.

Although § 1733 does not explicitly refer to pedestrian insureds, the language of both the MVFRL and Ms. Gittelmacher's policy is clear and unambiguous as to how the law should apply to insureds in Ms. Gittelmacher's circumstances. Section 1733 creates a distinction between

policies covering a vehicle occupied by the person injured (the first priority) and policies for a vehicle not involved in the accident that name the injured person as an insured (the second priority). *Id.* The excess coverage framework is in no way jeopardized by the application of § 1733 to Ms. Gittelmacher's recovery because her second priority UIM coverage is not being reduced by the first priority UIM coverage. *Generette*, 957 A.2d at 1191–92. Put more bluntly, Ms. Gittelmacher's second priority UIM coverage cannot be reduced by a first priority coverage in violation of state public policy where, by statutory definition, *no such first priority coverage exists.* Ms. Gittelmacher clearly and unambiguously qualifies for recovery under the second priority, as, indeed, might any number of other pedestrians, bicyclists, scooterists, or skateboarders in close proximity to motor traffic. The Court is thus "required to give effect to that language." *401 Fourth St. Inc.*, 879 A.2d at 171. And even if the Court were persuaded that there is a more lucid means of explaining to insureds the process of their recovery if they have the misfortune to be injured as pedestrians, "the Court cannot and should not interpose [its] views on public policy for those of the legislature because the Court's role is to interpret statutes, not re-write them." *Jones v. GEICO Choice Ins. Co.*, No. 22-cv-558, 2022 WL 2974909, at *7 (E.D. Pa. July 27, 2022) (*citing DiGirolamo v. Apanavage*, 312 A.2d 382, 385 (Pa. 1973) (internal quotation marks omitted).

### B. The "Other Insurance" Clause Is Not Void as an Impermissible *De Facto* Waiver of UIM Coverage

Ms. Gittelmacher also argues the "Other Insurance" clause operates as an impermissible *de facto* waiver of UIM coverage. Looking to *Gallagher v. GEICO Indemnity Company*, 201 A.3d 131, 132 (Pa. 2019), she argues that the "Other Insurance" clause is a *de facto* waiver of stacking benefits. In *Gallagher*, a motorcyclist was injured in a collision with a truck. *Id.* The injured insured had two policies with GEICO: one was a motorcycle policy and the other was a policy for his two automobiles. *Id.* at 133. The insured sought stacked UIM benefits under both policies, but

GEICO denied the claim under the automobile policy because a household vehicle exclusion found in an amendment to that policy stated: "This coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy." *Id.* at 133. Finding that GEICO's amendment violated the unambiguous mandates for waivers set forth in § 1738, the Pennsylvania Supreme Court found that the household vehicle exclusion violated the MVFRL and was unenforceable as a matter of law. *Id.* at 138.

Ms. Gittelmacher argues that, just as in *Gallagher*, her right to stacked coverage was effectively waived without her knowledge. But the facts of her case are easily distinguishable—here, Ms. Gittelmacher, her daughter, and her granddaughter all signed stacked benefits waivers, and under *Craley*, such waivers were knowingly executed. Ms. Gittelmacher does not elaborate how there could have been an impermissible *de facto* waiver when all three of the named insureds *explicitly* waived stacking in waivers conforming with § 1738. "The MVFRL precludes any clause that acts as a disguised waiver of stacking *by skirting Section 1738's express waiver requirements*." *Mione*, 2023 WL 2008314, at *6 (emphasis added). Section 1738 was in no way skirted here, so the "Other Insurance" clause is not void. *Cf. Geist v. State Farm Mut. Auto. Ins. Co.*, 49 F.4th 861, 866 (3d Cir. 2022) (finding that "[a]t bottom, [federal courts] must adhere to the MVFRL's text" regarding §§ 1731 and 1734 of the MVFRL).

Therefore, Ms. Gittelmacher does not persuade this Court that Pennsylvania public policy is violated by the "Other Insurance" clause.

## CONCLUSION

In sum, there is no genuine dispute of material fact, and Ms. Gittelmacher cannot overcome the clear and unambiguous terms of the stacked benefits waiver she signed, which

conform with the requirements of Pennsylvania's MVFRL and do not violate public policy. The Court grants summary judgment to Depositors and Travelers. Appropriate orders follow.

BY THE COURT:

_____
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**